IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS



**FILED**
May 25, 2021
SX-2001-CV-00588
**TAMARA CHARLES**
**CLERK OF THE COURT**

IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

|  |  |
|---|---|
| ALFRED GREENAWAY,<br><br>    Plaintiff,<br><br>    v.<br><br>VIRGIN ISLANDS WATER & POWER<br>AUTHORITY, INDUSTRIAL<br>AUTOMATION, INC.,<br><br>    Defendants. | **CASE NO. SX-2001-CV-00588**<br><br>ACTION FOR DAMAGES<br><br>(JURY TRIAL) |
| VIRGIN ISLANDS WATER & POWER<br>AUTHORITY,<br><br>    Defendant/ Cross-Complainant,<br>    v.<br><br>INDUSTRIAL AUTOMATION INC.,<br><br>    Cross-Defendant. | 2021 VI Super 54 |

**Lee J. Rohn, Esq.**
LEE J. ROHN AND ASSOCIATES, LLC.
St. Croix, U.S.V.I.
*Attorney for Plaintiff*

**Dionne Sinclair, Esq.**
VIRGIN ISLANDS WATER & POWER AUTHORITY
St. Croix, U.S.V.I.
*Attorney for Defendant*

**BRADY, Douglas A., Judge**

## MEMORANDUM OPINION and ORDER

¶ 1     Before the Court is Defendant Virgin Islands Water & Power Authority ("WAPA)'s fully briefed Motion for Summary Judgment, filed August 9, 2010; and Defendant WAPA's fully briefed Motion and Memorandum to Strike regarding two exhibits supporting Plaintiff's Opposition, filed October 10, 2010.

## BACKGROUND

¶ 2      Defendant WAPA owns and operates an energy producing facility located on St. Croix commonly known as the Richmond power plant ("the Plant").[1] Third-party Defendant Industrial Automation, Inc. ("IAI") agreed to perform work as an independent contractor at the Plant for which WAPA agreed to provide all scaffolding.[2] IAI subcontracted the installation of electrical conduits at the Plant to Best Construction, Inc. ("Best Construction"), which employed Plaintiff Alfred Greenaway as a level "A" electrician.[3] On June 4, 2001, Greenaway fell from a ladder while working on the conduit installation and suffered injuries, including the loss of a portion of his left index finger.[4] On September 28, 2001, Mr. Greenaway filed this present negligence action, asserting that WAPA breached its duty of care and proximately caused his injuries, medical expenses, loss of income, loss of capacity to earn income, disfigurement, mental anguish, pain and suffering, and loss of enjoyment of life.[5]

## DISCUSSION

### Motion to Strike

¶ 3      WAPA's Motion to Strike seeks to exclude exhibits from Plaintiff's Response to Defendant's Statement of Uncontroverted Facts ("RSOF") and Plaintiff's Counter Statement of Facts ("CSOF"), asserting that Exhibit No. 7 (Plaintiff Greenaway's September 17, 2010 Affidavit) and Exhibit No. 15 (a printout of a page from the website of the U.S. Department of Labor Occupational Safety and Health Administration, entitled "OSHA Fact Sheet") should be stricken in whole or in part pursuant to V.I. R. Civ. P. 12(f).[6]

---

[1] Def.'s Mot. for Summ. J., Statement of Uncontroverted Facts ("SOF") ¶ 1.

[2] *Id.* ¶¶ 2, 3.

[3] *Id.* ¶¶ 4-6.

[4] Pl.'s Response to WAPA's Statement of Uncontroverted Facts ("RSOF") ¶¶ 47-50.

[5] Complaint ¶ 12.

[6] The Virgin Islands Rules of Civil Procedure were adopted after the pending motions were filed. However, those rules apply to this action, as the Court makes no express finding that applying the rules would be infeasible or work an injustice, as Rule 12(f) is substantively identical to its federal counterpart. *See* V.I. R. Civ. P. 1-1 (c)(2).

Greenaway's Affidavit

¶ 4      WAPA contends that Plaintiff's Affidavit, Exhibit No. 7 to his RSOF and CSOF, is a "self-serving document that states nothing more than mere conclusions, opinion, and hearsay regarding what Plaintiff's [sic] believes WAPA knew, should have known or could have done at the time of his accident; contains blanket opinions which have no basis in fact regarding what WAPA would have done to the Plaintiff had the Plaintiff taken certain actions on the day of his accident;" and that "Plaintiff has provided no factual foundation for his opinions conclusions and statements found in [the Affidavit]."[7] Plaintiff responds that his Affidavit is based on "his personal knowledge, experience working at WAPA, and his observations [on the day of his injury]."[8] Plaintiff asserts that the record evidence and testimony referenced in his RSOF and CSOF sufficiently corroborate the statements made in the Affidavit.[9]

¶ 5      According to Rule 12(f) of the Virgin Islands Rules of Civil Procedure, the Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment; instead, the affiant must set forth specific facts that reveal a genuine issue of material fact. *See Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009) (citations omitted) (citing Fed. R. Civ. P. 56(e)(2), since amended: "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial.").

¶ 6      Here, Greenaway's Affidavit details with specific facts his experience as a Best Construction employee working at WAPA, both before and on the day of the incident. Greenaway's Affidavit does contain conclusory statements (e.g., ¶30: "WAPA's supervisors had total control over my employment when I worked for Best at WAPA's power plant.") Further Greenaway speculates as to facts that WAPA "knew" (e.g., ¶8: "WAPA knows that only a scaffolding crew can build scaffolding;" ¶ 26: "WAPA knew I would not be able to use [a safety

---

[7] Def.'s Mot. to Strike ¶¶ 5-7.

[8] Pl.'s Opp. to Mot. to Strike, at 4.

[9] *Id.*

belt or harness and lanyard] as there was no cable to attach them to.") Conclusory statements and speculation as to whether WAPA had "total control" of Greenaway's work, and as to what WAPA "knew" are improper and are not considered as a part of the summary judgment record.

¶ 7     However, the Affidavit also provides specific facts of Greenaway's personal knowledge regarding WAPA's operations and events of the day of the incident and details of the incident itself that are supported by his deposition and other facts in the record. WAPA does not dispute Greenaway's assertions that "there was no scaffolding set up in the open building for [Greenaway] to use to do the work;"[10] or that "at WAPA's Power Plant, you cannot just go and get any ladder you want to use. You have to use whatever WAPA gives you to do WAPA's work."[11] Greenaway's averment that he could only use what WAPA provided is supported by the record through his and other's depositions which affirm that WAPA kept all of the tools in a locked shed on its property and unlocked it the morning of the incident.[12] Greenaway maintains that "contrary to what WAPA is saying, there were no A frame ladders on the ladder rack and WAPA did not give us any A frame ladders to use for the conduit installation work."[13] These statements and others in the Affidavit are specific facts detailing Greenaway's experience at WAPA on the day of the incident.

¶ 8     Greenaway's remaining nonconclusory statements are not improper and may be  properly considered in response to WAPA's Motion for Summary Judgment. "It is well-settled that a single, nonconclusory affidavit or witness's testimony, when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment or judgment as a matter of law." *Burd v. Antilles Yachting Services, Inc.*, 57 V.I. 354, 360 (V.I. 2012) (internal quotations omitted). "This remains true even if the affidavit is 'self–serving' in the sense of supporting the affiant's own legal claim or interests." *Id.* "When a motion for summary judgment is properly made and supported,

---

[10] Greenaway Affid. ¶ 6.

[11] Greenaway Affid. ¶¶ 6, 9-10, 17.

[12] "The only action taken by WAPA personnel with regard to Plaintiff s use of a ladder was to open a tool shed in which the ladders were located. There were tools, including ladders available at the Plant for everybody s use." Def.'s Reply to CSOF ¶ 1 (citing depositions of Plaintiff and Kevin Sealey, Best Construction's Assistant Manager and Safety Superintendent).

[13] Greenaway Affid. ¶ 15.

an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must ... set out specific facts showing a genuine issue for trial." *Kirleis v. Dickie*, 560 F.3d at161.

¶ 9    WAPA does not contest the substance of Greenaway's allegations concerning the scaffolding and harness equipment. In *Burd*, the Supreme Court of the Virgin Islands found that a self-serving affidavit detailing specific factual circumstances raised a genuine issue of material fact that precluded entry of summary judgment where the defendant did not sufficiently contest the facts alleged in the affidavit. *See Burd*, 57 V.I. at 361; *See also Racz v. Cheetham*, 2019 WL 7985359 (V.I. Super. 2019). Here, WAPA does not provide evidence contradicting Greenaway's nonconclusory affirmations in his Affidavit. Although WAPA asserts scaffolding was available, it does not contest that none was erected. Further, Plaintiff's Affidavit aligns with the facts in the record, including testimony in his deposition. Therefore, the Affidavit sufficiently presents facts based upon Greenaway's personal knowledge, such that WAPA's Motion to Strike with respect to the Affidavit will be denied.

The OSHA Factsheet

¶ 10    WAPA further contends that Plaintiff's OSHA Factsheet, Exhibit No. 15 to his RSOF, is also inadmissible asserting that "Exhibit No. 15 is utter hearsay in that it is not certified or sworn to as a record... Plaintiff has provided no facts evidencing the authenticity of said document, the manner of its creation, the form in which it is kept and by whom it was created."[14] Plaintiff asserts that the OSHA Factsheet is admissible at trial under the rules of evidence and may appropriately be considered in response to WAPA's Motion for Summary Judgment.[15]

¶ 11    Plaintiff submitted the OSHA Factsheet as an exhibit to his RSOF. Rule 901(a) of the Virgin Islands Rules of Evidence states that "to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is was the proponent claims it is." Here, Plaintiff presented the OSHA guidelines on fall prevention with the full website address showing that the document was

---

[14] Def.'s Mot. to Strike ¶¶ 8-9.

[15] Pl.'s Opp. to Mot. to Strike, at 1. The Virgin Islands Rules of Evidence are applicable per V.I.R.E. 1101.

published by the U.S. Department of Labor. Additionally, the Factsheet states at the end of page 2 that it originates from the Department of Labor's website, www.osha.gov.[16] "Federal courts consider records from government websites to be self-authenticating under Rule 902(5)." *Crawford v. ITW Food Equip. Grp., LLC*, 2018 WL 3599211, at *2 (M.D. Fla. 2018) (citations omitted). Thus, Greenaway has proffered sufficient evidence that the OSHA Factsheet is what he claims it to be, satisfying the authentication requirement.

¶ 12    Notwithstanding authentication, the OSHA Factsheet is inadmissible because it is a hearsay statement not covered by any exception permitting its admissibility. Further, it seeks to introduce a standard of care without the proper foundation of an expert opinion on matters beyond the common experience of laypersons. Generally, evidence is admissible if it is relevant. V.I.R E. 402. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *James v. People*, 59 V.I. 866, 884 (V.I. 2013). "It is well established that industry standards are relevant, admissible evidence in ordinary negligence cases, since they are probative of the standard of care." *Antilles Sch., Inc. v. Lembach*, 64 V.I. 400, 425 (V.I. 2016). In *Antilles School,* the Supreme Court found that an OSHA regulation was relevant evidence of the standard of care.

¶ 13    WAPA contends that OSHA regulations do not apply to it because WAPA is merely a property owner.[17] However, WAPA's status vis-à-vis Plaintiff is a primary fact in dispute in the litigation. Greenaway asserts that WAPA may not be deemed a mere property owner because of its retention of control over the subcontractor's work at its property, a fact WAPA strongly denies. The New Jersey cases WAPA cites, *Meder v. Resorts Int'l Hotel, Inc.*, 240 N.J. Super. 470 (N.J. App. Div. 1989) and *Dawson v. Bunker Hill Plaza Assocs.*, 289 N.J. Super. 309 (N.J. App. Div. 1996), found that OSHA regulations did not apply to landowners in the particular facts of those cases because of the absence of control the landowners retained over the work being done on their respective properties. While OSHA regulations do not apply to residential property owners who do not control work on their properties, as the owner of the Plant, WAPA owes a duty to use

---

[16] Pl.'s Opp. to Mot. for Summ. J. Ex. 15.

[17] Def.'s Reply to Pl.'s Response to Mot. to Strike, at 5.

reasonable care to prevent foreseeable harm to persons at the Plant, a duty that may have an enhanced standard of care, possibly to include applicable OSHA regulations, to the extent that WAPA controlled the work of subcontractor's employees at the Plant. For purposes of the Motion to Strike, the OSHA regulations are relevant.

¶ 14    However, the OSHA Factsheet does not present regulations, but purports to describe them, characterizing itself as an "informational fact sheet highlighting OSHA programs, policies or standards" on fall prevention and protection. That topic is plainly relevant to this case as OSHA's regulations could be deemed evidence of a standard of care. But, as WAPA correctly asserts, the OSHA Factsheet itself characterizes its contents as hearsay, a factsheet that describes but does not recite any potentially admissible regulations. Because the OSHA Factsheet is being used to prove the substance of OSHA regulations that Greenaway asserts establish the applicable standard of care, it is hearsay that falls within no recognized exception to render it admissible.

¶ 15    Further, even if the Factsheet were otherwise admissible, because Plaintiff seeks to present it as evidence of a standard of care that is not within common experience of laypersons, such evidence can only be introduced through expert testimony not presented here. *See* V.I.R.E. 701(c) ("If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."). "If the matter in issue is one within the knowledge of experts only and not within the common knowledge of laymen, it is necessary for the plaintiff to introduce expert testimony in order to establish a *prima facie* case." *Charles v. Arcos Dorados USVI, Inc.*, 2019 VI 29 ¶ 19, 71 V.I. 1146, 1155 (V.I. 2019) (citations omitted).

¶ 16    In *Antilles School*, the Supreme Court noted that in an ordinary negligence claim, "Occupational Safety and Health Administration regulations are admissible *through expert testimony* to determine the standard of care owed by the defendant." 64 V.I. at 424 (citing *Savarese v. Agriss*, 883 F.2d 1194, 1200 (3d Cir. 1989) (emphasis added)). Here, the attachment to Plaintiff's Opposition to WAPA's dispositive motion of a printout of a summary of OSHA safety guidelines pulled from USDOL's website is insufficient without expert testimony as evidence attempting to establish an applicable standard of care in the facts of this case.

¶ 17    Accordingly, WAPA's Motion to Strike Plaintiff's Exhibits will be denied in part with respect to the Affidavit and granted in part with respect to the OSHA Factsheet.

**Motion for Summary Judgment**

¶ 18    In evaluating a motion for summary judgment, the Court must determine whether there exists a genuine dispute of material fact; one that would impact the outcome of the case under applicable law. *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 379-80 (V.I. 2014) (quoting *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008)). "Summary judgment is a drastic remedy [and] should be granted only when the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact," and that judgment is appropriate as a matter of law. *Id.* at 379-80.

¶ 19    Reviewing Defendant's Motion, the Court does not weigh the credibility of the evidence offered. Instead, all inferences from the evidence are drawn in favor of the nonmoving party, and any conflicting allegations, if properly supported by the record, are resolved in favor of the nonmovant. *See Perez v. Ritz-Carlton (V.I.), Inc.*, 59 V.I. 522, 527 (V.I. 2013) (citing *Williams*, 50 V.I. at 194-95). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *Martin v. Martin*, 54 V.I. 379, 389 (V.I. 2010). If the moving party discharges this initial obligation, the burden shifts to the nonmoving party to introduce some evidence showing the existence of a genuine issue of material fact. *See Perez*, 59 V.I. at 527-28. At this point, "the nonmoving party may not rest on its allegations alone, but must present actual evidence, amounting to more than a scintilla, showing a genuine issue for trial." *Id.* at 527.

¶ 20    The foundational elements of negligence— (1) a legal duty of care to the plaintiff, (2) a breach of that duty of care by the defendant (3) constituting the factual and legal cause of (4) damages to the plaintiff—are widely accepted and fundamental to the practice of law in the Virgin Islands and every other United States jurisdiction. *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. at 380. To overcome summary judgment on his negligence claim, Greenaway must show that there

is a genuine issue of fact as to whether WAPA (1) owed him a duty of care; (2) breached that duty; (3) which breach constituted the factual and proximate cause of (4) damages to Greenaway.[18]

¶ 21    WAPA contracted with IAI to perform work at its Richmond power plant. Pursuant to that agreement, WAPA was to supply all scaffolding.[19] IAI subcontracted the installation of electrical conduit to Best Construction, which employed Greenaway as a level "A" electrician. Greenaway underwent a 1–2-hour safety training from WAPA before working at the Plant. On June 4, 2001, IAI's and Best Construction's respective representatives, Owen Johnson and Richard Lockhart, met at the Plant with Greenaway and WAPA's representative, Fred Thompson. Plaintiff testified that the three men assigned Uel Massiah—another Best Construction employee—to work with him.[20] Following that meeting, Greenaway asserts that Johnson showed him the conduit installation route at the Plant that WAPA preferred.[21] Plaintiff testified that Thompson directed another WAPA employee to unlock the tool shed so that Greenaway was able to select the tools necessary to complete the job throughout the day.[22]

¶ 22    Shortly after the tool shed was unlocked, Greenaway and Massiah obtained two extended ladders, one for each of them, from the ladder shack.[23] WAPA had rope, lanyards, harnesses, and tie-off materials available for Greenaway's use, as well as scaffolding. No scaffolding was erected as WAPA had received no communication from Best Construction requesting erection of scaffolding in connection with the conduit installation job.[24] Best Construction's Assistant Manager and Safety Superintendent Kevin Sealey observed Greenaway and Massiah using ladders in a manner consistent with the safety policies of Best Construction.[25] Plaintiff tied off the ladder he was using while installing the first three lengths of conduit. However, there was nowhere to tie off the ladder while installing the final fourth length of conduit, and Greenaway proceeded to

---

[18] Although Greenaway's accident predates *Machado v. Yacht Haven*, as a pending case before the Court, the *Machado* standards apply. *See Aubain v. Kazi Foods of V.I., Inc.*, 70 V.I. 943, 948-49 (V.I. 2019).

[19] Def.'s SOF ¶ 3; Pl.'s RSOF, CSOF, Ex. 3.

[20] Pl.'s RSOF ¶ 15.

[21] Def.'s SOF ¶ 10; Pl.'s CSOF ¶ 10.

[22] Pl,'s RSOF, CSOF Ex. 13: Greenaway depos. at 77-79.

[23] *Id.* at 83-84.

[24] Def.'s Reply to Pl.'s CSOF ¶¶ 18, 20.

[25] Pl.'s RSOF ¶¶ 12-13.

complete the work without the ladder tied off. WAPA's instrument supervisor Rudolph Richardson observed Greenaway on the ladder and told him to secure the ladder.[26] The legs of the ladder slipped outward from the wall against which the ladder was leaning, and Greenaway fell and sustained substantial injuries.

¶ 23    The nature of the relationships among WAPA, IAI, and Best Construction is important to the determination of the duty WAPA owed to Greenaway on the day of the accident. It is undisputed that IAI subcontracted Best Construction to install the electrical conduit at WAPA's Plant. WAPA asserts that IAI was an independent contractor with control over all aspects of its work and, as property owner, WAPA is not liable for injuries to its contractor's employee. Greenaway contends that WAPA was nevertheless "negligent in failing to use reasonable care."[27] Greenaway asserts that WAPA owed him a duty of care under several theories: "(1) as the owner of the property that WAPA failed to make safe for Plaintiff's work; (2) under a general duty of reasonable care to avoid the risk of 'foreseeable harm' to Plaintiff; (3) as an employer who controlled and directed Plaintiff's work; and (4) pursuant to RESTATEMENT (SECOND) OF TORTS § 414."[28]

¶ 24    Generally, the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants. *Joseph v. Hess Oil Virgin Islands Corp.*, 54 V.I. 657, 665 (V.I. 2011). One of the exceptions to this general rule is where the employer of the independent contractor retains and negligently exercises control over the independent contractor and its employees. *Id.* "One who entrusts work to an independent contractor, but retains control of any part of the work, is subject to liability for physical harm to others for whom the employer owes a duty to exercise reasonable care, which harm is caused by the employer's failure to exercise control with reasonable care." *Id.* at 665–66 (quoting RESTATEMENT § 414). "[W]here an employer assumes affirmative duties, directs the method of performance of those duties, or offers specific instruction regarding the manner of performance, he may be liable when he exercises that control without due care." *Id.* at 666.

---

[26] Pl.'s RSOF ¶ 8.

[27] Def.'s SOF ¶ 2; Pl.'s RSOF ¶¶ 3, 8, 20, 24.

[28] Pl.'s Suppl. Opp. to Mot. for Summ. J., at. 5.

¶ 25    Neither the Supreme Court nor any Superior Court judge has explicitly conducted a *Banks* analysis to adopt the standards set out in RESTATEMENT (SECOND) OF TORTS § 414 as the common law of the Virgin Islands. As established in *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 981–84 (V.I. 2011), and subsequent cases, when confronted with an issue of Virgin Islands common law that the Supreme Court has not resolved—or that has been addressed only through erroneous reliance on former 1 V.I.C. § 4—courts must "engage in a three-factor analysis: first examining which common law rule Virgin Islands courts have applied in the past; next identifying the rule adopted by a majority of courts of other jurisdictions; and then finally—but most importantly—determining which common law rule is soundest for the Virgin Islands." *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. at 380.

¶ 26    The Supreme Court mechanistically adopted RESTATEMENT (SECOND) OF TORTS § 414 in *Joseph v. Hess Oil Virgin Islands Corp.*, decided prior to *Banks*, as the applicable Virgin Islands law. In *Hodge v. Virgin Islands Tel. Corp.*, 60 V.I. 105, 111 (V.I. Super. 2014), the Superior Court evaluated the Supreme Court's adoption of Section 414 and found it unnecessary to perform a *Banks* analysis or to depart from *Joseph's* holding in light of the repeated application of the Restatement's general rule in the courts of the Virgin Islands and its adoption in a vast majority of jurisdictions. *See id.* 60 V.I. at 111, n.15.

¶ 27    Virgin Islands courts have recognized and utilized the common law doctrine espoused in RESTATEMENT (SECOND) OF TORTS § 414 in *Edward v. Genoa Inc.*, 67 V.I. 50, 56 (V.I. Super. 2016); *Lynch v. Dependable Cleaning, Inc.*, No. CV 885/1995, 1997 WL 35410097, at *2 (V.I. Terr. 1997); and *Vanterpool v. CTF Hotel Mgmt. Corp.*, No. CV 507/1995, 2006 WL 8462919, at *4 (V.I. Super. 2006). The Third Circuit also applied Section 414 as the law of the Virgin Islands in *Gass v. Virgin Islands Tel. Corp.*, 311 F.3d 237, 45 V.I. 649 (3d Cir. 2002). As noted by the Superior Court in *Hodge*, RESTATEMENT (SECOND) OF TORTS § 414 has been adopted by a majority of courts in other jurisdictions.[29]

---

[29] *See Dabush v. Seacret Direct LLC*, 250 Ariz. 264, 478 P.3d 695, 702 (AZ. 2021); *AEP Texas Cent. Co. v. Arredondo*, 612 S.W.3d 289, 295 (Tex. 2020); *Buckles v. Cont'l Res., Inc.*, 2020 MT 107, 400 Mont. 18, 34, 462 P.3d 223, 234, cert. denied, 141 S. Ct. 1462 (2021).

¶ 28    Section 414 provides: "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." This rule that has been utilized by the courts of the Virgin Islands for decades, including the Supreme Court and the Third Circuit, and has been widely adopted in a majority of other jurisdictions, is deemed to constitute the soundest rule of law for the Virgin Islands. That standard sets forth the operative rule applicable to the facts and the parties in this case.

¶ 29    WAPA asserts that per its contract, "IAI was solely responsible for every aspect of Plaintiff's performance."[30] However, Plaintiff asserts that WAPA had control over the location and route the conduit would run and could be installed; that WAPA was supervising his day-to-day activities; and that WAPA retained control over his work and directed him to complete certain tasks on the job.[31] Additionally, "WAPA provided the materials and tools for Plaintiff to do the job," and "Plaintiff had to follow all of WAPA's rules and regulations," such as attending WAPA's safety course.[32] "Contradictory testimony on fundamental facts may not be resolved as a matter of law and presents a bar to summary judgment." *Joseph v. Hess Oil Virgin Islands Corp.*, 54 V.I. at 667 (quoting *Carty v. Hess Oil V.I. Corp.*, 78 F.Supp.2d 417, 421 (D.V.I. App. 1999)).

¶ 30    Here, there is conflicting testimony concerning who selected and oversaw the conduit route and Plaintiff's performance of its installation. Plaintiff maintains that WAPA selected the route, and that this information was conveyed to him by IAI's Johnson on the day of the incident. WAPA avers that Plaintiff's activities were supervised by Best Construction's Richard Lockhart; that it at no point had any control or say over Plaintiff's day to day work activities; and that it did not "mandate Plaintiff to use any specific tools or equipment in the performance of his work."[33] Further, WAPA asserts that as a level "A" electrician, Greenaway worked without supervision and was independently responsible for executing his assigned work and for choosing what tools were

---

[30] Def.'s Suppl. Brief in Supp. of Summ. J., at 3.

[31] Pl.'s RSOF ¶¶ 11-12.

[32] Pl.'s Suppl. Opp. to Mot. for Summ. J., at 16.

[33] Def.'s Reply to Pl.'s Suppl. Opp., at 8 (with record citations).

necessary to perform his assigned work; and that its contract with IAI specified that at no point was WAPA responsible for safety equipment.[34]

¶ 31    In *Joseph*, the Supreme Court found that control over the equipment used to complete a job created a legal duty to use reasonable care under RESTATEMENT (SECOND) OF TORTS § 414. 54 V.I. at 667. Here, WAPA stored all the tools Plaintiff used to install the conduit in a locked shed on its property accessible only through WAPA personnel. While Plaintiff was free to select from the shed the tools needed to complete the job, WAPA provided him with the equipment—"pipe threaders, and cutters, and benders"—including the ladder that Plaintiff was using when injured.[35] By its contract with IAI, WAPA was also responsible for providing all scaffolding for the job. On balance, there is sufficient evidence that a finder of fact could determine that WAPA retained control over at least some aspects of the manner and method of Greenaway's work. These genuine issues of material fact in dispute preclude resolution as a matter of law, such that summary judgment may not be entered on the existing record.

¶ 32    Plaintiff also claims that "WAPA breached a duty owed to him as the owner of the Richmond power plant by creating a dangerous condition in failing to provide scaffolding, in designating a dangerous conduit route without the proper and safe tools to install the conduit, and by requiring Plaintiff to use an extension ladder on a slippery surface with no place to tie off the ladder in order to do WAPA's work."[36] Plaintiff asserts that WAPA as owner of the premises owed him a general duty of care to avoid the risk of foreseeable harm. "The foreseeability of harm is the touchstone of the existence of a land possessor's duty of reasonable or ordinary care." *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. at 384 (internal quotations omitted).

¶ 33    Viewing all the evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that WAPA could have foreseen the potential for harm to Greenaway, in using an extended ladder instead of scaffolding, where the ladder could not be tied off or otherwise

---

[34] Def.'s Suppl. Brief in Supp. of Summ. J., at 15.

[35] Pl.'s RSOF, CSOF Ex. 13: Greenaway depos. at 77.

[36] Pl.'s Suppl. Opp. to Mot. for Summ. J., at 6.

adequately secured on parts of the conduit route; and that WAPA should have taken reasonable steps to prevent foreseeable harm to Greenaway while completing his assignment.

¶ 34    Additionally, while IAI subcontracted Best Construction, Plaintiff asserts that "there is a genuine dispute of fact as to whether Best Construction was a subcontractor of IAI or whether Best Construction employees… were performing additional duties at WAPA under Best Construction's ongoing emergency maintenance contract with WAPA."[37] "The Legislature of the Virgin Islands has decided that a contractor's employer can be liable to a subcontractor's employees." *Gass v. Virgin Islands Tel. Corp.*, 45 V.I. 649, 660 (3d Cir. 2002) (citing *Figueroa v. Hess Oil Virgin Islands Corp.*, 198 F.Supp. 2d 632, 641 (D.V.I. 2002)); *see* 24 V.I.C. §§ 263a, 284(b).

¶ 35    In the alternative, Greenaway asserts that WAPA owed him a duty of care as his borrowing employer. He asserts that Best Construction lent IAI some employees to run conduit at WAPA: "Best's Assistant Manager and Safety Superintendent, Kevin Sealey, testified that the Best employees worked strictly under WAPA supervisors when performing the maintenance work at the WAPA Power Plant."[38] Sealey explained that Best Construction employees did "whatever WAPA wanted." If Best Construction directed its employees to "start here running new pipe… and a WAPA supervisor came in and said stop and go here, then that's what they do."[39] Plaintiff asserts that he and Massiah were being supervised by a WAPA supervisor and that the two of them were on loan to WAPA for the conduit installation work.[40]

¶ 36 To the contrary, WAPA maintains that is did not assert "any level of control" over Greenaway's work.[41] In light of the foregoing, the Court finds that Greenaway has produced enough evidence that WAPA maintained a level of control over his work such that a dispute exists as to the material fact of whether Greenaway may have been WAPA's borrowed employee.

---

[37] Pl.'s RSOF ¶ 4.

[38] Pl.'s Opp. to Mot. for Summ. J., at 7; Pl.'s RSOF, CSOF, Ex. 12: Sealey depos. at 37.

[39] *Id.* at 24.

[40] Pl.'s RSOF ¶ 12.

[41] Def. Reply to Pl.'s Suppl. Oppos., at 16.

¶ 37    As there are genuine issues of material fact in dispute fact concerning the elements of Greenaway's negligence claim, WAPA's Motion for Summary Judgment will be denied.

On the basis of the foregoing, it is hereby

ORDERED that Defendant WAPA's Motion for Summary Judgment is DENIED; it is further

ORDERED that Defendant WAPA's Motion to Strike Exhibits is DENIED as to Exhibit 7 (Greenaway's Affidavit) and GRANTED as to Exhibit 15 (OSHA Factsheet); it is further

ORDERED that this matter will come on for a status conference on July 29, 2021 at 9:00 a.m. via Zoom.

DATED: May 25, 2021.

_____
DOUGLAS A. BRADY, JUDGE

ATTEST:
TAMARA CHARLES
Clerk of the Court

By: _____
Court Clerk Supervisor II
5/25/021